Charles J.C. SCOTT, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–288.

United States Court of Veterans Appeals.

Nov. 21, 1994.

Charles J.C. Scott, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Peter M. Donawick, Washington, DC, were on the pleadings, for appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, World War II and Korean Conflict veteran Charles J.C. Scott, appeals from a February 2, 1993, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to an effective date prior to September 14, 1988, for an award of a 100% disability rating for his service-connected anxiety reaction, and determining that there was no good cause to extend the time limit to file a Notice of Disagreement (NOD) following an April 1987 Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) decision. The Secretary has filed a brief urging affirmance. For the reasons that follow, the Court will affirm the decision of the Board.

## I. Background

The veteran served on active duty in the U.S. Navy from December 1944 to April 1946 and in the U.S. Army from September 1951 to September 1955. Record (R.) at 34, 80, 147. In July 1967, he filed with a VARO a claim for service connection for, inter alia, a "nervous condition". R. at 34–35. In a De-cember 1967 decision, the RO awarded him service-connected disability compensation for "anxiety reaction with conversion trends" and rated the disability as 10% disabling. R. at 50–51. In June 1974, the veteran request-ed an increased rating for this condition. R. at 53. In September 1975, the RO increased the rating to 30%, effective June 1974. R. at 70. A September 1976 VA outpatient treat-ment record stated that "work plans appear beyond [the veteran's] ability at this time." R. at 73. In a September 1978 decision (not included in the record on appeal (ROA)), the RO apparently confirmed the 30% rating. See R. at 87. In October 1978, the veteran filed an NOD, asking for a 100% rating based on his anxiety reaction and asserted inability to work. R. at 83. In a February 1980 decision, the BVA increased his anxiety-reac-tion rating to 50%, effective July 1977, but denied entitlement to a total disability rating based on individual unemployability (TDIU), concluding that his service-connected disabili-ty was "not of sufficient severity as to render him unemployable". R. at 106.

In April 1981, the veteran requested a 100% disability rating apparently based on a left-ankle disability. R. at 125. In a Janu-ary 1982 decision, the BVA granted service connection for the left-ankle disability. R. at 137. In a March 1982 decision, the RO as-signed a 20% rating and an effective date of March 1980 as to the left ankle, giving the veteran a combined rating of 60%. R. at 139.

In January 1984, the veteran filed a claim for service connection for chest and shoulder pain, and for 100% disability based on his "nervous condition, ankle injury, plus the chest and shoulder disability". R. at 144–45. In a February 1984 letter to the RO, Dr. Lynn Baumgartner, a private physician, con-cluded that the "nature and extent of [the veteran's] illness does at the present time effectively preclude his functioning in an oc-cupational capacity." R. at 149. In April 1984, the RO denied service connection for the chest and shoulder and stated that it had received no reply from the veteran to a re-quest it had made for evidence regarding his TDIU claim. R. at 151. In September 1984, the veteran stated that he had never received any such request from VA. R. at 158. In

October 1984, he filed a claim for TDIU based on "nerves, chest pains, [and] l[eft] ankle pain". R. at 161. In a June 24, 1985, decision, the RO denied reopening of both the TDIU and chest-condition claims because new and material evidence had not been presented. R. at 164. (The reference to "reopening" is a misnomer regarding the TDIU claim; the Court has held that a TDIU claim is an original claim, *see Abernathy v. Principi*, 3 Vet.App. 461 (1992), as is any claim for an increased rating of a service-connected condition, *see Proscelle v. Derwinski*, 2 Vet. App. 629 (1992).)

The June 1985 RO decision referred to a June 11, 1985, claim. The record on appeal contains neither a June 11, 1985, claim nor an RO decision that refers to the October 1984 TDIU claim. On September 5, 1985, the veteran filed an NOD which referred only to the denial of service connection for a left-side chest condition. Supplemental (Suppl.) R. at 2. A September 24, 1985, Statement of the Case (SOC) identified the issue as one for "[e]ntitlement to service connection for residuals of the left[-side] chest contusion" and did not refer to the appellant's TDIU claim, or the June 24, 1985, RO decision denying "reopening" of the prior denial of TDIU. R. at 168–70. In the "[s]ummary of evidence and adjudication actions", the SOC indicated that on June 11, 1985, the appellant attempted to "reopen" his claim for entitlement to service connection for a chest condition and that a June 24, 1985, RO decision had "denied entitlement to service connection for residuals of chest contusion." R. at 169. In November 1985, the veteran, pro se, filed a VA Form 1–9, Appeal to the BVA (1–9 Appeal), which stated: "I am hereby requesting 100% disability. At the present time I am getting 50% compensation for nerves, and 20% compensation for left ankle injury or a total of 60% disability. I am requesting disability for costochondritis of the left chest." R. at 176.

In a July 1986 decision, the BVA denied service connection for chronic residuals of a left-side chest condition (R. at 194), but did not address the veteran's claim to "reopen" the TDIU claim. In March 1987, the veteran again filed a claim for TDIU based on his service-connected left-leg and anxiety-reaction conditions. R. at 196. In an April 2, 1987, decision, the RO found that non-service-connected disabilities contributed to the veteran's inability to work and so denied entitlement to TDIU. R. at 206.

In January 1988, the veteran sought to "reopen" his chest-condition claim. R. at 209. In February 1988, the RO denied "reopening" of the claim, finding that the veteran had not submitted new and material evidence. R. at 211. On September 14, 1988, the veteran filed a claim for increased compensation based on TDIU, asserting that his anxiety reaction and left-ankle disability rendered him unemployable. R. at 222–23. On September 21, 1988, he filed an NOD as to the RO's February 1988 decision. R. at 225. On September 22, 1988, the RO again denied his September 14, 1988, TDIU claim. R. at 233.

In November 1988, the veteran testified under oath at a personal hearing before the RO. At the hearing, the hearing officer stated that the issues on appeal were, inter alia, entitlement to an increased nervous-condition rating, to an increased left-ankle rating, and to TDIU, and the question whether new and material evidence had been submitted to reopen the chest-condition claim for service connection. R. at 244. In a November 1988 decision, the hearing officer denied the chest-condition claim and determined that there was not enough evidence to support the TDIU claim. R. at 266. That same month, the RO issued a decision denying the left-ankle and anxiety-reaction increased-rating claims. R. at 264. In a February 1989 1–9 Appeal to the Board, the veteran requested four benefits: Service connection for his chest condition; an increased ankle-condition rating; an increased anxiety-reaction rating; and "100% [for] unemployability". R. at 282. In a July 1990 decision, the BVA concluded that the veteran met the statutory requirements for a 100% schedular rating for his anxiety-reaction condition. R. at 373. In an August 1990 decision, the RO assigned an effective date of September 14, 1988, the date of his TDIU claim, for the 100% rating. R. at 375.

In September 1990, the veteran filed an NOD as to the effective date awarded in the August 1990 RO decision. R. at 381. In a March 1991 statement, he requested an effective date of 1974. R. at 411–14. In March 1991, he submitted a written statement, apparently in response to a BVA request, detailing family and health problems during the period of April 1987 to April 1988, the one-year period following the April 1987 RO decision denying entitlement to TDIU. R. at 471–74. Later that same month, the veteran filed a statement alleging that "gross errors" and omissions had been made in the following four decisions: the February 1980 BVA decision denying entitlement to TDIU; the January 1982 BVA decision granting service connection for a left-ankle disability; the July 1986 BVA decision denying service connection for a left-side chest condition; and the August 1990 RO decision assigning an effective date of September 1988 for the veteran's 100% nervous-condition rating. R. at 411–14.

In an October 1991 decision, the Board found that the March 1987 claim had not been appealed within one year after the RO decision of April 1987, but remanded the matter to the RO for it to determine whether, pursuant to 38 C.F.R. § 3.109(b) (1993), there was good cause to extend the time limit for filing an NOD. R. at 454–56. In October 1991, the RO decided on remand that there was not good cause to extend that time limit. R. at 461. In a November 1991 submission to the RO, the veteran reiterated his March 1991 claim of "errors and omissions" in the various BVA and RO decisions. R. at 475–76.

In December 1991, the veteran's representative submitted a statement to the BVA describing an April 1988 claims-file review that the veteran had had with a VA Veterans Benefits Counselor (VBC) 15 days before the expiration of the one-year period for filing an NOD as to the April 21, 1987, RO decision denying entitlement to TDIU. R. at 480–81. According to the statement, the VBC did not inform the veteran during this review that the one-year limit for filing an NOD to that decision would end in 15 days. *Ibid.* In a March 1992 written presentation submitted to the Board, the veteran's representative asserted that the VBC's failure to inform the veteran of the impending NOD time-limit expiration might have constituted a violation of the duty to assist. R. at 483–84.

In the February 1993 decision here on appeal, the BVA found that the veteran had not shown good cause to extend the one-year limit for filing an NOD as to the April 1987 RO decision. R. at 9. Addressing the possible failure of the duty to assist, the BVA stated that the duty to assist does not concern the actual filing of a claim, but concerns only "developing facts pertinent to the claim". R. at 12. This appeal followed.

## II. Analysis

### A. Effective–Date Determination

The law governing the appropriate effective date for an award of increased compensation is set out in 38 U.S.C. § 5110(b)(2), which provides:

The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date.

*See also* 38 C.F.R. § 3.400(o)(2) (1993) (to the same effect). Accordingly, this Court has held that "evidence in a claimant's file which demonstrates that an increase in disability was 'ascertainable' up to one year prior to the claimant's submission of a 'claim' for VA compensation should be dispositive on the question of an effective date for any award that ensues." *Quarles v. Derwinski,* 3 Vet. App. 129, 135 (1992).

The Court further held in *Quarles* that "[r]esolution of the question of whether the Board accurately determined the effective date requires the Court to decide whether the Board erred in its factfinding." *Quarles,* 3 Vet.App. at 135. In reviewing a finding of fact made by the Board, the Court can only "hold unlawful and set aside such finding if the finding is clearly erroneous." 38 U.S.C. § 7261(a)(4); *see Lovelace v. Derwinski,* 1 Vet.App. 73 (1990); *Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on

issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... [the Court] cannot overturn them." *Gilbert,* 1 Vet.App. at 53.

Under the terms of section 5110(b)(2), the award of a 100% rating for the veteran's anxiety-reaction condition should have been effective either on the date of the claim, September 14, 1988, or on some date in the preceding year if it were ascertainable that the disability had increased in severity during that time. In its decision, the Board stated:

> Accordingly, the Board has carefully evaluated all the evidence of record during the year prior to September 14, 1988, in order to make a determination as to whether it was factually ascertainable that an increase in severity of the service-connected psychiatric disorder had occurred.... A review of the clinical record discloses no evidence that any of the veteran's service-connected disabilities, including his psychiatric disorder and his left ankle disorder, increased in severity during the one-year period prior to September 14, 1988, and therefore, we find that the required standard of factually ascertainable has not been demonstrated.

R. at 12–13.

▮ The ROA contains no medical records suggesting an increase in the severity of the veteran's disabilities within the year prior to the September 1988 claim. Accordingly, the Board's finding that the veteran's disability had not increased in severity in the year prior to his September 1988 claim is supported by a plausible basis in the record and thus is not subject to reversal by this Court. *See Gilbert, supra.*

The Court notes that the record is unclear as to whether the RO had adjudicated the October 1984 TDIU claim, because the June 1985 RO decision refers to a June 1985 claim, not the October 1984 claim, and the record contains neither a June 1985 claim nor an intervening RO decision in response to the October 1984 claim. If the October 1984 TDIU claim was never finally adjudicated and remains open, that might afford the veteran a basis for claiming that the 100% rating should, pursuant to 38 U.S.C.

§ 5110(b)(2), have been made effective on the date of the October 20, 1984, claim or on some date in the preceding year if it is ascertainable that the disability had increased in severity during that time. *See* 38 U.S.C. §§ 7104(a), 511(a); *Isenhart v. Derwinski,* 3 Vet.App. 177, 180 (1992) (VA failure to adjudicate original claim for pension resulted in that claim remaining open despite grant of subsequent claim for pension). However, that issue was not raised by the appellant here and the record does not provide an adequate basis for the Court to deal with it.

### B. Good–Cause Exception

▮ The Court also holds that the Board's finding that the veteran did not show good cause to extend the one-year NOD filing limit was not based on an arbitrary or capricious application of the regulation governing such discretionary extensions. Under the law, if no NOD is filed within the one-year period after notice of an RO decision is mailed to a VA claimant, "the [RO's] action or determination shall become final and the claim will not thereafter be reopened or allowed, *except as may otherwise be provided by regulations* not inconsistent with this title." 38 U.S.C. § 7105(c) (emphasis added). Under this authority, the Secretary has prescribed a regulation providing that the one-year time limit "*may* be extended for *good cause* shown". 38 C.F.R. § 3.109(b) (1993) (emphasis added). "[T]here is no legal entitlement to an extension; the regulation commits the decision to the sole discretion of the Secretary." *Corry v. Derwinski,* 3 Vet.App. 231, 235 (1992). The exercise of such a discretionary authority as to which regulations have been prescribed is subject to review by this Court to determine whether the exercise of discretion was made

> in accordance with the regulatory guidance or whether the decision was made in an arbitrary or capricious manner. 38 U.S.C. § [7261](a)(3)(A) ...; *see Service v. Dulles,* 354 U.S. 363 [77 S.Ct. 1152, 1 L.Ed.2d 1403] (1957) (holding that a decision committed to the "absolute discretion" of an agency head is subject to judicial review when the agency has promulgated

regulations governing the exercise of such discretion.)[.]

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962)).

*Smith (Barbara C.) v. Derwinski*, 1 Vet.App. 267, 279 (1991) (parallel citations omitted).

In the instant case, the Court holds that the Board's factual determination that the veteran failed to file an NOD as to the April 2, 1987, RO decision denying entitlement to TDIU is supported by the evidence of record. There is no document of record from the veteran expressing disagreement and an intent to appeal dated within one year after the April 1987 decision. Because the veteran did not so appeal *within* the one-year period, that decision became final at that point under 38 U.S.C. § 7105(c). *See Rowell v. Principi*, 4 Vet.App. 9, 15 (1993).

■ As to the application of the good-cause exception, the Board considered the veteran's argument that he suffered from family and health problems during the period in question, but noted that during that time he *was* able to file a claim for service connection for a left-side chest condition. R. at 13. The Board found that the veteran's physical and personal problems during that period "did not prevent him from filing a timely notice of disagreement." *Ibid.* The Court holds that the Board's finding on this matter articulates "a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n, supra* (quoting *Burlington Truck Lines, Inc., supra*), as required by application of the standard applied in *Smith, supra*.

## C. Duty to Assist

■ The veteran contended to the Board that VA had failed in its duty to assist him because a VBC had failed to inform him of the impending deadline to file an NOD as to the April 1987 decision during the April 1988 claims-file review. R. at 483–84. However, the failure of the VBC to inform the veteran during the claims-file review that the RO decision would become final 15 days hence was not a violation of the VA duty to assist since VA had already informed the veteran of that deadline. VA Form 1–4107 was included with the notice sent to the veteran on April 21, 1987, informing him that his TDIU claim had been denied. R. at 207. VA Form 1–4107, entitled "Notice of Procedural and Appellate Rights", provides:

> **APPEAL.** You may appeal our decision to the Board of Veterans Appeals at any time *within one year* from the date of this letter.... You can start the appeal process by filing a Notice of Disagreement.

R. at 142 (emphasis added). Because VA did instruct the veteran how to appeal his case in a timely matter, VA did not fail in its duty to assist the veteran in the preparation and presentation of his claim.

## D. Clear and Unmistakable Error

■ Pursuant to 38 C.F.R. § 3.105(a) (1993), the Board must revise previous RO decisions which were based on "clear and unmistakable error [CUE]". *See Russell v. Principi*, 3 Vet.App. 310, 313–14 (1992) (en banc). This Court has jurisdiction to review, upon a proper and timely appeal, a BVA decision that a prior final RO decision did not contain CUE within the meaning of § 3.105(a). *See* 38 U.S.C. §§ 7252, 7266(a); *Russell*, 3 Vet.App. at 314–15. The Court may not review such a claim in the first instance; the issue must have been raised to and decided by the BVA. *See Russell*, 3 Vet.App. at 315.

In the present case, the veteran notified the BVA of specific evidence he believed was not considered in three BVA decisions (R. at 411–14), and before this Court he alleges a number of "gross errors and omissions" in VA's handling of his case since the filing of

his first claim in 1967 (Brief at 3–24). In his brief, the Secretary treated these contentions as an attempt to raise a claim of CUE. Secretary's brief at 19.

■ The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) recently addressed whether final decisions of the BVA, as opposed to an RO, are subject to collateral review for CUE. In reversing this Court's decision in *Smith (William A.) v. Principi*, 3 Vet.App. 378 (1992), the Federal Circuit ruled that "the CUE review authority in § 3.105(a) [relates] only to review of AOJ [agency of original jurisdiction] adjudicatory decisions and not to those of the Board." *Smith (William A.) v. Brown*, 35 F.3d 1516, 1527 (Fed.Cir.1994). Accordingly, the Court holds that the appellant's assertions of "errors and omissions" in three BVA decisions— those of February 1980, January 1982, and July 1986—cannot constitute a claim of CUE.

■ Furthermore, this Court has set out the requirements for a reasonably raised CUE claim as follows:

> If a claimant-appellant wishes to reasonably raise CUE there must be some degree of specificity as to what the alleged error is and, unless it is the kind of error ... that, if true, would be CUE on its face, persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error.

*Fugo v. Brown*, 6 Vet.App. 40, 44 (1993) (emphasis in original). Because the appellant has not demonstrated how but for the alleged errors in those three Board decisions the result "would have been manifestly different", *Fugo, supra*, his claim of CUE in the prior final Board decisions would have failed notwithstanding the Federal Circuit's recent *Smith* holding.

■ The veteran also attempted to raise a CUE claim against the August 1990 RO decision assigning an effective date of Sep-

tember 1988 for his 100% disability rating. R. at 381. 38 C.F.R. § 20.1104 (1993) provides:

> When a determination of the agency of original jurisdiction is affirmed by the Board of Veterans' Appeals, such determination is subsumed by the final appellate decision.

Because the RO decision as to which the veteran attempted to raise CUE was affirmed by the BVA decision here on appeal, the RO decision "became part and parcel of the final [February 1993] BVA decision." *Olson v. Brown*, 5 Vet.App. 430, 433 (1993). That BVA decision here on direct appeal is not final, and, even if it were, under *Smith* now, the scope of CUE is limited to prior **final RO** decisions. *See Smith, supra*; *Russell*, 3 Vet.App. at 314; *see also Pollard v. Brown*, 6 Vet.App. 11, 13 (1993). The Court holds that the appellant may not properly raise a claim of CUE against the August 1990 RO decision that was the subject of the NOD leading to the February 1993 BVA decision which is here on direct appeal.

### III. Conclusion

Upon consideration of the record and the pleadings of the parties, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, or articulation of reasons or bases—that would warrant remand or reversal under 38 U.S.C. §§ 7252, 7104(d)(1), 7261 and 38 C.F.R. § 3.105(a), and the analysis in *Gilbert*. Therefore, the Court affirms the February 2, 1993, BVA decision.

AFFIRMED.