Donald Clarence CATHELL, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–1225.

United States Court of Veterans Appeals.

Argued Oct. 30, 1995.

Decided Feb. 13, 1996.

Thomas J. Karr, with whom Lisa H. Marino and Karen M. Wahle, Washington, DC, were on the brief, for the appellant.

John D. McNamee, with whom Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; and Thomas A. McLaughlin, Deputy Assistant General Counsel, Washington, DC, were on the brief, for the appellee.

Before MANKIN, IVERS, and STEINBERG, Judges.

MANKIN, Judge:

The appellant, Donald C. Cathell, through counsel, appeals a September 9, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied a disability rating in excess of 70% for schizophrenia, to include a total rating based on individual unemployability (TDIU). Both parties filed briefs, and the appellant filed a reply brief. Oral argument was held on October 30, 1995. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will vacate the September 9, 1993, BVA decision and remand the matter to the BVA for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

The appellant served on active duty from October 1954 to July 1965 in the United States Air Force. Upon discharge from active duty a VA regional office (VARO) award-

ed the appellant an initial 70% disability rating for schizophrenia; however, in April 1975, the VARO assigned a 100% rating due to TDIU because of his descriptions of his symptoms and his statement that he "had never been substantially employed since his release from active military service in July 1965."

The VA later discovered that while the appellant was collecting benefits for his 100% disability rating due to TDIU he was working as a full-time employee with the United States Postal Service. In May 1986, the appellant pleaded guilty to one count of mail fraud and one count of illegally receiving benefits from the VA based on false statements. The VA then terminated his 100% award retroactively, and reinstated the 70% "schedular disability rating for the service-connected disability[,] which has now been in effect from July 1965." In May 1987, the BVA affirmed this decision to terminate the appellant's 100% award retroactively and, in a separate decision on the same day, denied a rating increase for TDIU.

In March 1988, the appellant filed a claim for restoration of his 100% disability rating based on TDIU and for cessation of the VA's charging him for overpayment. He submitted a letter from his VA doctor, Bernadine Prince, M.D., which listed his prescribed medications. Also, the appellant submitted a psychiatric consultation report done in September 1988, which listed his diagnosis as "schizophrenia, paranoid type, chronic." The VARO denied the appellant's claim, and he filed a Notice of Disagreement (NOD) in January 1989.

In July 1989, the appellant testified that since his discharge from service he had received continual treatment and medication for his schizophrenia. Dr. Prince submitted a letter which stated that she considered the appellant "unemployable," and that "his future prospects for employment [were] very poor." In September 1989, R.R. Gillespy, M.D., from the VA outpatient clinic, submitted a statement which provided that the appellant was "not able to work at a gainful occupation at this time." In July 1990, the BVA denied a rating increase for the appellant's acquired psychiatric disability. The appellant did not appeal this decision to this Court.

In September 1990, the appellant filed additional claims for an increase in his disability rating. The VARO denied the claims in October 1990. In April 1991, the BVA denied entitlement to an increased rating and concluded that "[t]he schedular requirements for a total disability rating for compensation due to schizophrenia [were] not met." The appellant then appealed to this Court. Both the Secretary and the appellant moved for a remand because of inadequate reasons or bases for the rejection of Dr. Prince's letter. By an order dated March 17, 1992, this Court granted a joint motion for a remand.

In July 1992, the BVA remanded to the VARO for a better explanation from Dr. Prince of her opinion, for gathering of current medical records, for a current social and industrial survey, for an investigation to determine if the appellant was not working, for any further examinations that were needed, and to schedule the appellant for a psychiatric examination by a board of three psychiatrists, to include Dr. Prince.

In connection with this remand order, the following evidence and information was uncovered. First, the VARO gathered additional outpatient records from 1986 to 1992. Then, the VARO conducted a social and industrial survey; however, it only included an interview with the appellant and his wife. The VARO also ordered a general medical examination, and Enrique Aranata, M.D., the examining psychiatrist, reported the following diagnosis:

AXIS I: Schizophrenic disorder, paranoid type, chronic with psychotic symptoms despite medications.

AXIS II: The patient's development history reveals tendency towards a schizoid personality early in life.

AXIS III: Status post cholecystectomy and hypertensive cardiovascular disease.

AXIS IV: The patients [sic] current stressors consist of financial difficulties that his failure to gain employment is imposing on his family.

AXIS V: The patient's current level of global functioning may be placed at GAF

40 with serious impairment in social and occupational functioning due to impairment in reality testing, communication and mood that even influences his relationships that is sometimes colored by delusions and hallucinations.

In October 1992, another VA examination revealed that "[t]he possibility that the appellant may be exaggerating his difficulties for financial gain cannot be ruled out ...; however, the best data available ... indicate that he is suspicious and angry, impulsive and has little control over strong emotions." Finally, a panel of three psychiatrists reported that it is "very obvious that [the appellant is] making wild claims and faking a lot of symptomatology." The panel's diagnosis was "Personality disorder, mixed with antisocial traits," and it concluded that, although the appellant had a history of schizophrenia, there was "not much evidence [of schizophrenia] at the present time." Dr. Prince was not a member of this panel because she had died prior to the examination. The record indicates that the appellant's current physician is Dr. Kalali.

In January 1992, the VARO again denied entitlement to an increased disability rating. The BVA, in the decision that is currently on appeal to this Court, concluded that the "criteria for a rating in excess of 70% for schizophrenia to include a total rating based on individual unemployability have not been met." *Donald C. Cathell*, BVA 93–16693, at 4 (Sept. 9, 1993) The appellant then filed a timely appeal to this Court.

## II. ANALYSIS

Title 38 of the Code of Federal Regulations provides for three separate ways that the appellant could receive a 100% disability rating for his schizophrenia. *See Shoemaker v. Derwinski*, 3 Vet.App. 248, 255–56 (1992); 38 C.F.R. §§ 4.132 (Diagnostic Codes (DC) 9203 and 9210), 4.16(b), (c) (1994). First, under DC 9203 and 9210, a 100% rating requires a determination that the appellant has "[a]ctive psychotic manifestations of such extent, severity, depth, persistence or bizarreness as to produce total social and industrial inadaptability." 38 C.F.R. § 4.132. Second, section 4.16(c) provides that if a

mental disorder has been assigned a disability rating of 70%, "and such mental disorder precludes a veteran from securing or following a substantially gainful occupation[,] ... [then] the mental disorder shall be assigned a 100% schedular evaluation under the appropriate diagnostic code." 38 C.F.R. § 4.16(c); *but see Johnson (Gary) v. Brown*, 7 Vet.App. 95, 97–99 (1994) (suggesting that section 4.16(c) is superfluous in relation to section 4.132 schedular rating DCs). Third, section 4.16(b) provides:

It is the established policy of [the VA] that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director [of the] Compensation and Pension Service, for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section.

38 C.F.R. § 4.16(b) (1991); *see Shoemaker*, 3 Vet.App. at 255–56.

The appellant contends that he was prejudiced by the BVA decision because (1) Dr. Prince's death, after the BVA had directed that she be a member of the panel, made unavailable her explanation of why the appellant was unemployable, and thus, the VA should have replaced her with Drs. Gillespy or Gatling; (2) the VA failed to get a statement from the appellant's current treating physician; and (3) statements were not obtained from Dr. Gillespy as to why he found the appellant unemployable, and for what type of employment the appellant would qualify. *See* Appellant's Brief (Br.) at 3, 10, 19. The appellant also alleged that the VA simply ignored evidence favorable to him and violated the rule of law espoused in *Gabrielson v. Brown*, 7 Vet.App. 36 (1994). Appellant's Br. at 18–19.

The Secretary argues that degree of impairment is a question of fact, and that the BVA's decision should be affirmed because a plausible basis exists in the record for the decision. Secretary's Br. at 8. The Secretary's position is that the BVA should have

·relied on the three-member psychiatric panel report because it is the "best and most probative" evidence in the case. *Id.* at 7. The Secretary argued that it was the best evidence because it was based on a review of the entire record, psychological testing, examination of the veteran, and the consultation of three psychiatrists. *Ibid.* Also, the Secretary contends that the appellant's disability picture does not warrant a schedular rating greater than 70% under 38 C.F.R. §§ 4.132 (DC 9203), 4.130, and 4.7. Secretary's Br. at 7.

In addition, the Secretary argues that the BVA properly rejected Dr. Prince's opinion because that opinion was based on the same information that the appellant initially provided the VA when he was obtaining benefits based on fraud. *Id.* at 13–14. The determination of credibility, the Secretary argues, belongs to the BVA, and it is not an error for the BVA to determine the weight and credibility that evidence is given, if the BVA provides adequate reasons or bases for its conclusions. *Id.* at 14.

 The determinations whether a claimant is entitled to an increase in a schedular disability rating and whether a veteran is unemployable under section 4.16, are questions of fact subject to the "clearly erroneous" standard of review in 38 U.S.C. § 7261(a)(4). *See Solomon v. Brown,* 6 Vet. App. 396, 402 (1994); *Pratt v. Derwinski,* 3 Vet.App. 269, 270 (1992). Under this standard, the Court can overturn the BVA decision only when there is no "plausible basis in the record" for the decision. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990).

### A. TDIU Claim

 *1. Conflicting Medical Opinions.* If the BVA rejects medical evidence that is favorable to the claimant, it must "point to a medical basis other than the panel's own unsubstantiated opinion which supported the decision." *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991). However, as this Court has stated in *Owens v. Brown,* 7 Vet.App. 429, 433 (1995), "[i]t is not error for the BVA to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons [or]

bases." The Court, in *Owens,* further noted that "[i]t is the responsibility of the BVA, not this Court, to assess the credibility and weight to be given to evidence." *Ibid; see also Smith v. Derwinski,* 1 Vet.App. 235, 237–38 (1991) (stating that "[d]etermination of credibility is a function for the BVA," not the Court).

Here, the BVA did provide a detailed account for why it chose to rely on the psychiatric panel opinion when it stated:

> The report of the board of psychiatrists is the best and most probative evidence in this case. Unlike other reports, it is not based on the assertions of the veteran, which are not credible, but on a review of the entire record, psychologic testing, examinations of the veteran and consultation among three specialists. We have reviewed the entire file and we find this report to be in accordance with the evidence. We find this to be massive and weighty evidence against the claim. On the other hand, the evidence which supports the claim merely reflects the veteran's well-established ability to tell VA medical personnel convincing stories. Because the medical opinions which support the claim are based, in critical part, on information from the veteran which is not credible, it has little evidentiary weight.

*Cathell,* BVA 93–16693, at 10.

Specifically, the BVA concluded that the evidence which supported the appellant's claim lacked credibility for two reasons. *Id.* at 7. First, the BVA stated that it was rejecting the medical opinions of Drs. Prince and Gillespy, partly because the opinions were "based on non-service-connected disabilities...." *Ibid.* In *Kaiser v. Brown,* 5 Vet. App. 411, 413 (1993), this Court stated that when "[t]he evaluation reports of record do no more than mention [the] appellant's non-service-connected disabilities, and none indicates that [the] appellant's unemployability was based upon these additional disabilities" the BVA may not disregard the appellant's proffered competent medical conclusions, unless there is contrary medical evidence in the record to rebut the appellant's medical evidence. In the instant case, it appears that both Drs. Prince and Gillespy did not base

their conclusions that the appellant was unemployable on any non-service-connected disabilities. Rather, these opinions seem to rely specifically on the appellant's schizophrenia. However, unlike the appellant in *Kaiser*, there is medical evidence, in the form of the psychiatric panel and the October 1992 evaluation reports, which expressly contradicts the appellant's medical evidence.

Second, the BVA also rejected the opinions of Drs. Prince and Gillespy insofar as they were "based on statements by the [appellant] which [were] not credible." *Cathell*, BVA 93–16693, at 7. The BVA reasoned that the appellant's statements were not credible because they were "similar to those the [appellant] made before, when he was lying about his ability to work," and the appellant made "repeated financial complaints which [are] consistent with [a] motivation to deceive for financial gain." *Ibid.*

Although the BVA certainly has the authority to make credibility assessments, it may not "substitute its own unsubstantiated medical opinion for expert medical opinions of record." *Colvin*, 1 Vet.App. at 175; *see also Smith*, 1 Vet.App. at 237–38. Here, the BVA stated, that "We cannot dissociate objective findings such as anxiety, from the veteran's attempt to deceive the examiner as to the extent of his disability." *Cathell*, BVA 93–16693, at 8. The Court notes that this is a fine line that the BVA is walking between making a legitimate "credibility assessment" which appropriately relies on the panel opinion and forming an "unsubstantiated medical opinion" which simply uses the panel opinion as a vehicle to implement the BVA's own opinion without providing sufficient reasons or bases for rejecting the appellant's medical evidence. *See Colvin*, 1 Vet.App. at 175. However, because there are other clear errors in the adjudication of the appellant's TDIU claim which require a remand for readjudication, the Court does not need to resolve this issue of whether the BVA improperly rejected the appellant's medical evidence at this time.

■ *2. Reasons or Bases and Further Development.* The BVA has a well-established statutory duty to provide a written statement of its "findings and conclusions" setting forth sufficient "reasons or bases" for its decision. *See* 38 U.S.C. § 7104(d)(1). This Court has strictly construed this statutory duty, and has articulated it in the following manner:

> The Board must identify those findings it deems crucial to its decisions and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explanations. A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor *"clear enough to permit effective judicial review"*, nor in compliance with statutory requirements.

*Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990) (emphasis added); *see also Peters v. Brown*, 6 Vet.App. 540, 542 (1994). Accordingly, if the BVA fails to provide an adequate statement of its "reasons or bases," the case must generally be remanded for further adjudication. *Gilbert*, 1 Vet.App. at 57; *cf. Soyini v. Derwinski*, 1 Vet.App. 540 (1991).

■ When the BVA makes a determination that the appellant is not unemployable under 38 C.F.R. § 4.16(c), it must state on the record "that [the] appellant was able to secure or follow a substantially gainful occupation." *Gleicher v. Derwinski*, 2 Vet.App. 26, 28 (1991); *see also Kaiser*, 5 Vet.App. at 412. In *Gleicher*, the Court stated that "to merely allude to educational and occupational history, attempt[ing] in no way to relate these factors to the disabilities of the appellant, and conclude that some form of employment is available," is insufficient reasons or bases for the decision. *Gleicher*, 2 Vet.App. at 28. Here, the BVA did not even discuss the appellant's educational and occupational history. In fact, the BVA offered nothing more than "a bare conclusory statement" when it concluded that the appellant is not unemployable. *See Gilbert*, 1 Vet.App. at 57.

■ Moreover, when the VA denies a TDIU claim, it cannot simply state that the denial is based on a non-service-connected condition rather than the service-connected condition, as the BVA did in this case. *See Vettese v. Brown*, 7 Vet.App. 31, 35 (1994); *Hatlestad v. Brown*, 5 Vet.App. 524, 529 (1993). This Court has stated that a clear

explanation requires analysis of the current degree of unemployability attributable to the service-connected condition as compared to the degree of unemployability attributable to the non-service-connected conditions. *Hatlestad*, 5 Vet.App. at 529; *see also Pratt v. Derwinski*, 3 Vet.App. 269, 272 (1992); *Fluharty v. Derwinski*, 2 Vet.App. 409, 413 (1992). Here, the BVA did not differentiate between the appellant's service-connected medical condition and non-service-connected disabilities in discussing his employability status.

■ The Court also notes that the BVA did not sufficiently explain why it chose to rely on the psychiatric panel report and the Social and Industrial Field Survey (industrial survey) while ignoring the report of Dr. Araneta and the psychologist's report. The BVA's failure to fulfill its statutory duty to provide sufficient reasons or bases prevents the Court from effectively reviewing the adjudication. *See Meeks v. Brown*, 5 Vet.App. 284, 288 (1993); *Browder v. Brown*, 5 Vet. App. 268, 272 (1993). Accordingly, the Court holds that, pursuant to 38 U.S.C. § 7104(d)(1), a remand is required because the BVA did not provide adequate "reasons or bases" for its conclusion that the appellant is not unemployable.

Furthermore, based on the unusual circumstances of this case and in order to improve the underlying adjudication, the BVA should, on remand, in addition to providing sufficient reasons or bases for its conclusions, instruct the VARO to conduct a detailed industrial survey and a new psychiatric panel examination. The Secretary conceded during oral argument that the most recent industrial survey conducted by the VARO was deficient. The new industrial survey should comply with the BVA's July 1992 remand order and be based on a detailed investigation with respect to the appellant's ability to maintain substantial gainful employment. *See Littke v. Derwinski*, 1 Vet.App. 90, 93 (1990) (if "the record before the BVA [is] clearly inadequate [a] remand is required").

■ A new psychiatric panel examination is needed because the present panel examination was conducted without the appellant's current treating physician. In July 1992,

when the BVA remanded the case to the VARO for further evidentiary development, it instructed the VARO to conduct "a psychiatric examination by a board of three psychiatrists to include [Dr.] Prince." However, when Dr. Prince died, the VARO scheduled the panel examination without including in her stead anyone familiar with the appellant's disabilities. The record indicates that, at the time, the appellant's new physician was Dr. Kalali, the chief psychiatrist of the local VA clinic where the appellant received medical treatment. The Court finds that it was critical, on the facts of this case, for the examination to include at least one doctor who was familiar with the appellant's disabilities in order for the claims to be properly developed and adjudicated. Accordingly, on remand the BVA should ascertain the identity of the appellant's current VA treating physician and, pursuant to the BVA's own July 1992 remand order, arrange for a new examination to be conducted by a panel including that physician.

### B. Schedular Rating

With respect to the schedular increased rating claim, the Court recognizes that its development is likewise deficient. In particular, it is deficient because, as the Court stated in part II.A.2. of this opinion, "[T]he BVA did not sufficiently explain why it chose to rely on the psychiatric panel report" and ignore other evidence favorable to the appellant. *Ante* at 545. Moreover, the additional development for the TDIU claim could also be relevant to the adjudication of the schedular claim. Therefore, the Court holds that the schedular increased rating claim must be remanded for the same reasons that the TDIU claim is remanded.

### C. Secondary Service Connection

■ Next, the appellant contends that "[t]he BVA erred in not considering the veteran's secondary service connection for drug-induced neurological damage." Appellant's Br. at 20. The appellant asserts that "the BVA should have inferred the issue of [his] secondary disorder, and should have assisted the veteran in developing this claim, i.e., by ordering the proper neurological examina-

tions." Appellant's Reply Br. at 7 (citing *Douglas v. Derwinski*, 2 Vet.App. 103 (1992) *affirmed in relevant part, Douglas v. Derwinski*, 2 Vet.App. 435 (1992) (en banc)). In *Douglas*, however, the Court addressed an issue that was before the BVA for the first time, not before this Court for the first time, as in the instant case. The appellant's reliance on *Douglas* is, thus, misplaced. Accordingly, because this issue was not raised below, it will not be considered by this Court. *See* 38 U.S.C. §§ 7266(a), 7252(b); *Brooks v. Brown*, 5 Vet.App. 484, 488 (1993); *Herzog v. Derwinski*, 2 Vet.App. 502, 503 (1992).

Finally, because the Court will not entertain the merits of the appellant's claim for secondary service connection, the Secretary's motion to strike from the record the appellant's reference to the MERCK MANUAL 2490 (15th ed. 1987), which was included in the appendix of his brief, is moot.

### III. CONCLUSION

Based upon the above analysis and after consideration of the record and the briefs and oral arguments of the parties, the Court holds that the September 9, 1993, decision of the BVA is VACATED and the matter is REMANDED for further proceedings consistent with this opinion.