Daniel P. HERLEHY, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 96–879.

United States Court of Veterans Appeals.

Oct. 7, 1998.

Before NEBEKER, Chief Judge, and
KRAMER and STEINBERG, Judges.

## ORDER

PER CURIAM:

On March 18, 1998, the Court, in a memorandum decision, affirmed in part and vacated in part the May 16, 1996, decision of the Board of Veterans' Appeals (Board) and remanded a matter. On April 3, 1998, the appellant filed a timely motion for reconsideration or, in the alternative, for review by a three-judge panel.

Upon consideration of the foregoing, the parties' prior pleadings, and the record on appeal, it is by the single judge

ORDERED that the appellant's motion for reconsideration is denied. It is by the panel

ORDERED that the appellant's motion for review by a panel is denied.

NEBEKER, Chief Judge, concurring:

While I have difficulty with the notion that this case is relatively simple, given the sixteen-page memorandum decision ending with a citation to *Frankel v. Derwinski*, 1 Vet. App. 23 (1990), I am convinced that no violence to the remainder of the criteria announced in *Frankel* has been done. Accordingly, I do not believe that panel action is warranted.

KRAMER, Judge, concurring:

The dissent would remand "the claim for a [total disability based on individual unemployability (TDIU) ] rating for some or all of the period from 1986 to 1989 [claim 6] ... in order for the Board to apply 38 C.F.R. § 4.16(c)" to determine "whether the evidence of record showed that the appellant's [post-traumatic stress disorder (PTSD) ] rendered him unemployable" during that period. Simply put, there is no basis upon which to conclude that the Board was clearly erroneous in finding that impairment from 1986 to 1989 attributable only to PTSD did not cause unemployability. *See* Record (R.) at 32. A VA clinical record, dated in December 1986, references congestive heart failure as the reason for the appellant's retirement and receipt of Social Security disability benefits. R. at 593. In that report, the examiner, after noting that the appellant was taking fifteen different medications for his heart condition, that he had had two strokes, and that he had continued difficulties due to PTSD, stated that the appellant had been unable to "hold regular employment." R. at 594. Similarly, the report from a VA examination, dated in June 1989, states that the appellant had severe impairment based upon factors including "multiple physical illnesses" and "aging." R. at 1174.

Thus, because there is nothing of record to show that PTSD *by itself* rendered the appellant unemployable during that period, the appellant would not be entitled to relief. Furthermore, because the appellant is seeking a total disability rating for the period between August 1986 and July 1989, the question here is effective date, not present entitlement. Considering that such a claim was filed in July 1989, and was not a claim of clear and unmistakable error, the appellant could not be awarded an earlier effective date. *See* 38 U.S.C. § 5110(a) (effective date "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application"). Judge Steinberg dissents from this analysis on two bases. First, he asserts that the appellant may have filed a claim for TDIU in a statement submitted in support of his claim for PTSD. However, a claim for the former could be properly at issue only after, not before, the appellant was service connected for PTSD. In other words, whether or not a TDIU claim is a separate claim or a claim for an increase, as Judge Steinberg suggests in his dissent, it involves only the degree of disability—something not at issue until service connection has

been granted. Even assuming, as Judge Steinberg appears to assert, that a TDIU claim is really a claim for an increase, thus indicating the applicability of 38 U.S.C. § 5110(b)(2), rather than section 5110(a), the language of section 5110(b)(2) may, by its terms, preclude an award of TDIU for the year preceding a July 1989 application because the application must be received within one year from the date of the increase. If such an increase were to date back to the December 1986 VA examination, as suggested by Judge Steinberg, that would be three years prior to the filing of the application in 1989 and, thus, would not meet the requirement of section 5110(b)(2) that the application be received within one year of the increase. Thus, it appears that remand would be an academic exercise. *See Sabonis v. Brown*, 6 Vet.App. 426, 430 (1994) (where law and not evidence is dispositive, claim should be denied or appeal terminated because of lack of legal merit).

As to claim 7, because it was not the subject of the appellant's motion for reconsideration or panel review, it should not be addressed. Moreover, the cases cited by the dissent are clearly distinguishable because they do not involve 100% schedular and TDIU ratings for *separate* conditions.

STEINBERG, Judge, dissenting:

I voted for a panel decision here because I believe that the appellant's motion has demonstrated that one aspect of the Board of Veterans' Appeals (Board or BVA) decision presents an issue that is neither simple nor not reasonably debatable under *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990).

First, the Board, in determining that the appellant was not entitled to an award pursuant to section 4.16(a) of title 38, Code of Federal Regulations, for a rating for total disability based on individual unemployability (TDIU) due to post-traumatic stress disorder (PTSD) for the period from 1986 to 1989, indicated the following:

> [W]hile the evidence of record reflects severe impairment due to his PTSD, the appellant's heart disease was consistently recognized as a contributing factor causing overall impairment prior to July 1989, and therefore, it is the Board's opinion that the appellant's psychiatric condition did not *solely* prevent his ability to obtain and retain employment.

Record (R.) at 32. The proper standard, however, is, as VA's regulations themselves stress, not whether the appellant's unemployability was due solely to PTSD but rather whether the evidence of record showed that the PTSD caused the appellant to be unemployable. *See* 38 C.F.R § 4.16(a) (1997) ("It is provided further that the existence or degree of non[-]service-connected disabilities or previous unemployability status will be disregarded where the percentages referred to in this paragraph for the service-connected disability or disabilities are met and in the judgment of the rating agency such service-connected disabilities render the veteran unemployable"); *Hatlestad v. Brown*, 5 Vet. App. 524, 529 (1993) ("the central inquiry ·in determining whether a veteran is entitled to a TDIU rating is whether that veteran's service-connected disabilities alone are of sufficient severity to produce unemployability"); *see also Cathell v. Brown*, 8 Vet.App. 539, 544–45 (1996) (remand required where Board, in determining that appellant was not unemployable under 38 C.F.R. § 4.16(c), did not analyze degree of unemployability attributable to service-connected condition as compared to non-service-connected disabilities). In other words, as long as the appellant's PTSD alone rendered him unemployable, it is irrelevant whether another disability (here, his heart condition, which was not rated as service connected for the relevant period) also contributed to his lack of employability.

In *Cathell*, the Court stated:

> In *Kaiser v. Brown*, 5 Vet.App. 411, 413 (1993), this Court stated that when "[t]he evaluation reports of record do no more than mention [the] appellant's non-service-connected disabilities, and none indicates that [the] appellant's unemployability was based upon these additional disabilities" the BVA may not disregard the appellant's proffered competent medical conclusions, unless there is contrary medical evidence in the record to rebut the appellant's medical evidence.

*Cathell,* 8 Vet.App. at 543. The situation in the instant case appears remarkably similar to that in *Kaiser, supra.* Here, there is substantial evidence that, during the relevant period, the appellant was rendered unemployable by his severely disabling service-connected PTSD—namely records from three VA psychiatric evaluations. *See* R. at 593–95 (record from December 1986 VA psychiatric examination reporting that veteran unable to continue his education or hold regular employment and capable of being reasonably interpreted as attributing his employment disability to his PTSD that resulted from his experiences in Korea, including frequent firefights and rescue operations, and assessing his level of impairment in terms of the applicable diagnostic criteria as "VERY POOR—marked impairment in both social and occupational functioning", DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 30 (3d ed., 1980) [hereinafter DSM–III] ); R. at 1171–74 (record from June 1989 VA psychiatric examination reporting that veteran unable to maintain regular employment and capable of being reasonably interpreted as attributing his employment disability to experiences in service where he was in constant life-threatening situations, and assessing his level of impairment in terms of the applicable diagnostic criteria as "GROSSLY IMPAIRED ... in virtually all areas of functioning" DSM–III, *supra* ); *see also* R. at 1490–92 (March 1993 letter from VA examiner stressing that, at the time of 1986 and 1989 examinations, he had found the veteran to be unemployable based entirely on veteran's service-connected PTSD). The fact that the appellant may have been found eligible for retirement and Social Security disability benefits in 1974 (R. at 100) based on congestive heart failure is not evidence that 12 years later his PTSD did not render him unemployable (regardless of whether his heart condition also impaired his employability). In light of the strong evidence that the appellant was afflicted with severely disabling PTSD during the period in question, there is no way for the Court to determine whether the Board, if it had applied the proper standard, would have determined that the appellant's PTSD was sufficient to render him unemployable. Thus, remand is required for such a finding to be made in the first instance by the Board, not this Court. *See Webster v. Derwinski,* 1 Vet.App. 155, 159 (1991) (Court is not to conduct de novo factfinding but rather to remand to Board for it to find facts in first instance, subject to later review by Court).

Moreover, the Board, in denying TDIU, did not cite to and, thus, apparently failed to consider 38 C.F.R. § 4.16(c) (1996), which provides that, in certain instances, a mental disability shall be assigned a 100% disability rating where it precludes a veteran from securing or following substantially gainful employment. *See Beaty v. Brown,* 6 Vet. App. 532, 536 (1994) (BVA required to consider all applicable provisions of law and regulation). Section 4.16(c) was removed from the Code of Federal Regulations by the Secretary effective on November 7, 1996, *see* Schedule for Rating Disabilities; Mental Disorders, 61 Fed.Reg. 52695, 52700 (1996), but was in force when the veteran's claim was before the Board in May 1996. As the memorandum decision correctly points out, therefore, section 4.16(c) is potentially applicable to the veteran's claim by virtue of *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991) ("where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should ... apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so"). In this regard, it appears that PTSD was the appellant's only condition that was rated service connected between 1986 and 1989. *See Johnson (Gary) v. Brown,* 7 Vet.App. 95, 97 (1994) (Court sustains Secretary's interpretation that 38 C.F.R. § 4.16(c) reasoning "applies equally well in other cases involving mental disorders which are the cause of unemployability, regardless of whether another compensable service-connected disability is or is not present"); *see also Cathell,* 8 Vet.App. at 542.

In his concurring statement, Judge Kramer, the author of the single-judge decision, maintains that there is no way under Department of Veterans Affairs (VA) effective date statutes, citing 38 U.S.C. § 5110(a) (effective

date "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application"), that the appellant, absent a claim of clear and unmistakable error in a prior final decision, could possibly be awarded an effective date for TDIU (based on service-connected PTSD) any earlier than the July 1989 effective date assigned for the 100% schedular rating for his service-connected heart condition. That is because he maintains that the appellant's TDIU application was filed in July 1989 (*see* R. at 1178). Although this record did clearly constitute a TDIU claim, based on the reasonable reading of all of the appellant's filings with VA that our caselaw and VA's own regulations require, *see E.F. v. Derwinski,* 1 Vet.App. 324, 326 (1991), it appears that the appellant may well have filed a claim for TDIU in September 1986 in a statement submitted in support of his claim for PTSD. *See* R. at 494 (after extensively detailing his extreme nervousness and nightmares and numerous in-service stressors and flashbacks to them, veteran states: "I have also had difficulty finding work and holding a job for any great length of time as the enclosed Social Security records will show").

Moreover, it appears that, under our caselaw, it is still an open question as to whether a claim for TDIU is governed by 38 U.S.C. § 5110(a), as Judge Kramer asserts in his concurrence, or by 38 U.S.C. § 5110(b)(2). Two panel opinions suggest, without directly holding, that such claims are governed by section 5110(b)(2) ("effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date"); *see also* 38 C.F.R. § 3.340(a)(2) (1997). *See Green (Doris) v. Brown,* 10 Vet. App. 111, 119 (1997) ("section 5110(b)(2) plainly applies after its enactment to the hypothetical veteran who, claiming an increase in disability, is awarded a TDIU rating"); *Scott (Charles) v. Brown,* 7 Vet.App. 184, 189 (1994) (dictum) ("If the October 1984 TDIU claim was never finally adjudicated

and remains open, that might afford the veteran a basis for claiming that the 100% rating should, pursuant to 38 U.S.C. § 5110(b)(2), have been made effective on the date of the October 20, 1984, claim or on some date in the preceding year if it is ascertainable that the disability had increased in severity during that time."). I note also that in a memorandum decision Judge Kramer (albeit in a nonprecedential action) recognized the unsettled nature of this question:

> As to the applicability of 38 U.S.C. § 5110(b)(2) and 38 C.F.R. § 3.400(*o*)(2), the Court notes that under its case law it is unclear whether the appellant's February 1992 application for TDIU is to be treated as an original claim or a claim for an increase for purposes of determining effective date.

*Diaz–Cuevas v. Gober,* No. 96–1306, 1997 WL 652723, at *5 (Vet.App. Sept. 29, 1997). Thus, because the issue currently appears to constitute an open question, even if the appellant did not file his claim until July 1989 he has a colorable claim under section 5110(b)(2) that he would be entitled to TDIU for at least the year preceding his application.

Thus, I believe that the claim for a TDIU rating for some or all of the period from 1986 to 1989 (when the appellant was awarded a 100% schedular rating for a service-connected heart condition) should be remanded in order for the Board to apply 38 C.F.R. § 4.16(c), employing the proper standard of whether the evidence of record showed that the appellant's PTSD rendered him unemployable, *see Cathell, supra,* and to provide an adequate discussion and evaluation of "all material evidence submitted by [or] on behalf of a claimant" on that claim, *Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994). *See* 38 U.S.C. § 7104(d)(1); *Webster,* 1 Vet.App. at 159 (Court is not to conduct de novo factfinding but rather to remand to Board for it to find facts in first instance, subject to later review by Court).[1]

---

1. Some might find it anomalous for the veteran to be denied a 100% TDIU rating derived from his service-connected PTSD condition for the period 1986–89 even though he was granted a 100% rating for his heart condition in July 1989 and it is conceded that that very heart condition also affected his ability to work during the 1986–89 period.

At the very least, I believe that the above analysis demonstrates that this matter is reasonably debatable and sufficiently complex to require disposition by a panel under *Frankel, supra.* What the Court appears to have done in the memorandum decision on this claim is basically to rewrite the BVA decision. Writing the Board decision should be left to the Board. *See Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991) ("remand is meant to entail a critical examination of the justification for the decision" and is not "merely for the purposes of rewriting the opinion").

Finally, although it is the appellant and not the Secretary who has sought a panel decision, the Court's single-judge disposition remanding claim 7 (a current TDIU rating) seems contrary to the plain meaning of 38 C.F.R. § 4.16(a) (1997), which provides:

Total disability ratings for compensation may be assigned, *where the schedular rating is less than total*, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities....

(Emphasis added.) The Board found that a § 4.16(a) TDIU rating was no longer for consideration in this case because the veteran currently has a *schedular* 100% service-connected disability rating for his heart disorder. However, under the regulation it seems clear that a TDIU rating is for consideration only when the veteran is not already assigned a 100% schedular rating. It seems clear that a veteran cannot receive two 100% ratings. *See Vettese v. Brown,* 7 Vet.App. 31, 34–35 (1994) ("[a] claim for TDIU presupposes that the rating for the condition is less than 100%"); *Holland v. Brown,* 6 Vet.App. 443, 446 (1994) ("100% rating means that a veteran is totally disabled").