Nelson R. GREEN, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 97–115.

United States Court of Veterans Appeals.

Oct. 7, 1998.

Charlene S. Jones, Shelly L. Madden, Robin Duncan Culbertson and Barton F. Stichman, Washington, DC, were on the pleadings, for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and John D. McNamee, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and IVERS, and STEINBERG, Judges.

IVERS, Judge:

The veteran appeals from an October 25, 1996, Board of Veterans' Appeals (BVA or Board) decision which denied an increased rating for his service-connected lymphadenopathy. The veteran has filed a motion for summary reversal of the rating increase decision and for remand of the inferred, but not addressed, issue of total disability due to individual unemployability (TDIU). The Secretary has filed a response, concurring in the request for remand of the inferred TDIU claim, but seeking remand of the rating increase issue for readjudication. For the reasons stated below, the Court will reverse the BVA's October 25, 1996, decision and remand the case for assignment of a 100% schedular disability rating.

## I. FACTS

The veteran served in the United States Army from May 1970 to May 1973 and from September 1978 to June 1985, with service in Vietnam from August 1971 to April 1972. Record (R.) at 130, 132. A February 1984 clinical record in the veteran's service medical records (SMRs) shows a diagnosis of "Reactive Inguinal Adenopathy," which is an enlargement of the lymphatic glands between the abdomen and thigh. R. at 32; *see* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 28, 837 (27th ed.1988) [hereinafter DORLAND'S]. In an October 1984 SMR, a doctor noted "a history of recurrent inguinal adenopathy and ... excision of reactive lymph nodes approximately a year ago." R. at 50.

A March 1985 SMR noted swollen lymph nodes on both sides of the veteran's neck. R. at 87. In April 1985, inguinal adenopathy was again diagnosed following a medical examination that also found enlarged parotid (near the ear) glands. R. at 97; *see* DORLAND'S at 1233.

The veteran had VA compensation and pension medical examinations in January and March 1986. R. at 138-41. A VA rating decision dated April 28, 1986, acknowledged a "well documented history" of the veteran's enlarged lymph glands and awarded service connection for "lymphadenopathy [ (disease of the lymph nodes) ], unknown etiology" with a 10% disability rating from June 29, 1985. R. at 153; *see* DORLAND'S at 960. The diagnostic codes (DC) assigned by VA were DC 7799, DC 7912, and DC 7709. R. at 153.

After the April 1986 rating decision the veteran continued to seek medical attention for lymphadenopathy, and the condition was routinely noted in VA medical reports. R. at 162, 168, 178, 289, 375, 387-88, 415, 425, 435, 437, 536-37, 549. The veteran sought reevaluation of the VA rating for his lymphadenopathy four different times from 1987 to 1991. Each time VA confirmed the 10% evaluation assigned in the April 1986 decision. R. at 167, 283, 306, 378.

In a December 1991 rating decision, however, VA increased the veteran's rating for lymphadenopathy to 30%. In the decision, VA explained its selection of DC 7709 for analogous evaluation and rating of the veteran's condition as follows:

> Given this veteran's 40 pound weight loss, ... coupled with his complaints of night sweats and fever, rating agency holds that there is raised a reasonable doubt regarding the overall severity of the lymphadenopathy and will consider evaluation and analogy to 38 C.F.R. § 4.117, diagnostic code 7709. In this regard, symptomatology productive of an occasional low grade fever, mild anemia, fatigue ability [sic], *or*

pruritus will be evaluated 30 percent disabling.

R. at 397. In 1993, the veteran sought reevaluation of the rating for ·his condition. VA responded in three separate rating decisions that year, each confirming the 1991 30% rating. R. at 411, 466, 509, 522.

The veteran filed a Notice of Disagreement in May 1993, following the first 1993 confirmed rating decision. R. at 471. In a Statement in Support·of Claim filed by the veteran in September 1993, he wrote, "My employer, the U.S. Post Office, now will not allow me to work due to my health and the risk they would be taking." R. at 517. Ultimately, a 1995 BVA decision remanded the veteran's case to a VA regional office (RO). The purpose of the remand was for VA to "procure clarifying data" and to review the veteran's claim again. R. at 528.

Following the remand, the veteran had VA medical examinations in September 1995 and in March 1996. R. at 536, 549. The type of examination each time was identified as "compensation and pension evaluation for hematologic disorder (lymphatic)." *Id.* The reports from both examinations noted that the veteran's adenopathy (enlargement of the lymph glands) was "currently active." R. at 537, 550; *see* DORLAND'S at 28.

In April 1996, the RO issued another rating decision which continued the 30% rating for lymphadenopathy established in its December 1991 decision. R. at 553. The rating decision did not discuss the diagnostic codes but identified them as DC 7712 and DC 7709. R. at 555.

The BVA then issued the decision on appeal, acknowledging the findings of the two recent VA medical examinations and stating the following:

> The veteran's disability has been evaluated under 38 C.F.R. § 4.117, [DC] 7709, which covers Hodgkin's disease.... [T]he rating schedule provisions concerning Hodgkin's disease were changed to provide for removal of the rating criteria for 30, 60, and 100 percent ratings and instead assign a 100 percent evaluation for an indefinite period during the time of active disease or treatment, followed by a determination

concerning whether to reduce the rating based on medical findings rather than a regulatory assumption that there will be an improvement.... The Board has considered the complete evidence of record, along with the veteran's contentions concerning his condition, and finds that he would not meet the requirements for an evaluation in excess of 30 percent under the modified provisions of the rating schedule.

R. at 10–11. The Board denied entitlement to an increased evaluation for lymphadenopathy. *Id.*

## II. ANALYSIS

The BVA must base its decisions on applicable provisions of law and regulation. 38 U.S.C. § 7104(a). This Court is required to "hold unlawful and set aside decisions" by the BVA which are not in accordance with the law. 38 U.S.C. § 7261(a)(3). Since the BVA decision on appeal is not in accordance with 38 U.S.C. § 1155 and 38 C.F.R. § 4.117 (1997), we will reverse.

It is the responsibility of the Secretary of Veterans Affairs to adopt and apply a schedule of disability ratings for veterans. 38 U.S.C. § 1155. "[P]ayments of compensation *shall* be based" on the schedule. *Id.* (emphasis added). When a condition is not listed in the rating schedule, it may be rated under a code for a closely related injury or disease, that is, given an analogous rating. 38 C.F.R. § 4.20 (1997).

Regarding analogous ratings generally, 38 C.F.R. § 4.27 instructs that unlisted conditions first be given a "built-up" diagnostic code, "[t]he first 2 digits [being] selected from that part of the schedule most closely identifying the part, or system, of the body involved; the last 2 digits [being] '99' for all unlisted conditions." In selecting code numbers for unlisted diseases, "preference is to be given to the number assigned to the disease itself; if the rating is determined on the basis of residual conditions, the number appropriate to the residual condition will be added[.]" 38 C.F.R. § 4.27 (1997).

When the veteran's lymphadenopathy was initially assigned a disability rating of 10% in 1986, the codes used were DC 7799, DC 7912,

and DC 7709. R. at 153. DC 7799 simply designated the lymphadenopathy as an unlisted condition of the lymphatic system and signaled the use of an analogous rating. *See* 38 C.F.R. § 4.27.

DC 7912 was consistently listed in rating decisions as the first analogous code for the veteran's condition, making it the "number assigned to the disease." R. at 153, 397, 406, 555; *see* 38 C.F.R. § 4.27. DC 7912 is the code for "[p]luriglandular syndrome," and the full text concerning ratings under DC 7912 reads, "Evaluate according to major manifestations." 38 C.F.R. § 4.119 (1997). No rating percentages are provided.

In its rating actions in this case for the veteran's lymphatic condition, VA added reference to DC 7709, the code for Hodgkin's disease, after DC 7912. R. at 153, 397, 406, 555; *see* 38 C.F.R. § 4.117. This reflected the instructions of the regulation to add the "number appropriate to the residual condition" when rating on the basis of that condition. 38 C.F.R. § 4.27. Since rating percentages are not provided for either DC 7799 or DC 7912, and the veteran's lymphadenopathy was always assigned at least a 10% rating, it is clear that VA consistently evaluated the condition under DC 7709.

The BVA, in reviewing the veteran's claim for an increased rating for lymphadenopathy, affirmed the use of DC 7709 by acknowledging its use to evaluate the veteran's disability and then discussing the rating percentages under DC 7709. R. at 10–11. The Board explained that "the rating schedule provisions concerning Hodgkin's disease were changed to provide for removal of the rating criteria for the 30, 60, and 100% ratings and instead assign a 100% evaluation for an indefinite period during the time of active disease or treatment." R. at 11.

The Board proceeded, however, to conclude that the veteran "would not meet the requirements for an evaluation in excess of 30% under the modified provisions of the rating schedule," despite having noted in its decision that the veteran's "adenopathy was currently active." R. at 11, 9. This was a gross misapplication of the law to the facts. It is a particularly perplexing conclusion since the Board had, in the immediately preceding sentences of its decision, noted that all incremental percentage ratings for DC 7709 had been removed, and that a 100% rating applied when the disease was active or being treated.

VA's Schedule for Rating Disabilities of the Hemic and Lymphatic Systems was amended effective October 23, 1995. *See* 60 Fed.Reg. 49,225 (1995) (codified at 38 C.F.R. § 4.117 (1996)). The amended criteria for evaluation under DC 7709 called for, and presently call for, a 100% rating with active disease or during a treatment phase. *Id.* No provision was made for assigning a rating lower than 100% where the disease was active or under treatment.

■ The BVA was required to reevaluate the veteran's claim using the amended rating schedule because it became effective during the pendency of the veteran's appeal to the BVA, it was more favorable to the veteran than the prior schedule, and it was not made inapplicable to pending claims. *See DeSousa v. Gober*, 10 Vet.App. 461, 465–67 (1997); *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991). Once a diagnostic code was assigned for an analogous rating for the veteran's lymphadenopathy, application of the criteria and the ratings for that code was required. *See* 38 U.S.C. § 1155 (ratings "*shall* be based" on rating schedule).

In his response to the veteran's motion for summary reversal, the Secretary contends that the appropriate disposition of the rating increase issue is to remand to the BVA. The Secretary argues that, pursuant to the reasons-or-bases requirement of 38 U.S.C. § 7104(d)(1), remand is necessary so that the BVA can address whether DC 7709 is still to be applied in light of the October 1995 amendment of the rating criteria. Secretary's Response (Resp.) at 2.

The Secretary relies on *Lendenmann v. Principi*, 3 Vet.App. 345 (1992), for the proposition that a remand is necessary when a BVA decision does not provide an adequate statement of reasons or bases for favoring one diagnostic code over others, when rating by analogy. Resp. at 3. In *Lendenmann*, the veteran specifically challenged the analogous diagnostic code assigned to his unlisted

condition. 3 Vet.App. at 348–49. The BVA had approved the use of the diagnostic code for inner ear inflammation (labyrinthitis) to rate analogously the veteran's balance disorder when medical evidence showed that the balance disorder resulted from a brain injury incurred during surgery. *Id.* at 350–51. The Court required the BVA to adjudicate fully the question of the appropriate DC on remand, and to explain the reasons for the diagnostic code selection it made. *Id.* at 351.

In the present case, the aptness of the selected analogous diagnostic code was not an issue before the BVA. The issue raised by the veteran was whether he was entitled to an increased rating for his service-connected lymphadenopathy. R. at 471, 480. The question of whether the analogous diagnostic code selected by VA, and applied by the BVA, was the appropriate code first appeared in the Secretary's response to the veteran's motion for summary reversal filed with *this* Court regarding *this* appeal.

▪ An issue raised for the first time on appeal to this Court "cannot be considered by the Court until such time as it is properly submitted to the appropriate [VARO] and an adverse determination is made there and at the Board." *Talon v. Derwinski*, 3 Vet.App. 74 (1992) (citations omitted). Furthermore, "[t]he Secretary may not seek review of any . . . decision" of the BVA, 38 U.S.C. § 7252(a), and the veteran has not raised the issue of whether DC 7709 is the appropriate analogous code for his lymphadenopathy. That issue is not before this Court.

The issue throughout the veteran's claim and appellate processes has been whether he is entitled to an increase in the rating assigned for his service-connected lymphadenopathy, analogously rated under DC 7709. Upon numerous RO reviews of the claim for a rating increase, VA has not opted to change the analogous diagnostic code. The December 1991 rating decision explained VA's selection of DC 7709 for analogous application to the veteran's lymphadenopathy. The code description was not changed after the 1995 BVA remand and the two medical examinations that were specifically focused on the lymphadenopathy. The use of DC 7709 for analogous rating was not a threshold question in the October 1996 BVA decision on appeal, but rather was implicitly affirmed by the Board's action in deciding the issue before it, that is, whether to grant a rating increase.

▪ The Court now holds that the Board's denial of the veteran's claim for a rating increase was legally erroneous. In failing to assign a 100% rating for the veteran's active disease, the Board did not grant the veteran the benefit of the law most favorable to him because the Board did not base its analogous rating of his lymphadenopathy on the amended rating schedule. *See* 38 U.S.C. § 1155; *Desousa* and *Karnas,* both *supra.*

Finally, the veteran has asserted, and the Secretary has agreed, that the BVA should have inferred a claim for total disability based on individual unemployability (TDIU) from the evidence of record. Appellant's Motion (Mot.) for Summary Reversal and Remand at 7–8; Secretary's Response to Appellant's Motion at 6–7. The parties stipulate that the BVA should be instructed, upon remand by the Court, to address a TDIU claim. *See* Mot. and Resp., *supra.*

"Total disability ratings for compensation may be assigned, *where the schedular rating is less than total,* when the disabled person is, in the judgment of the rating agency, unable to follow a substantially gainful occupation as a result of service-connected disabilities. . . ." 38 C.F.R. § 4.16(a) (1997) (emphasis added). Since the veteran in this case is entitled to a 100% schedular rating for his service-connected lymphadenopathy, he is not eligible for a TDIU evaluation. *See Vettese v. Brown*, 7 Vet.App. 31, 34–35 (1994) ("claim for TDIU presupposes that the rating for the condition is less than 100%"); *Holland v. Brown*, 6 Vet.App. 443, 446 (1994) (100% schedular rating "means that a veteran is totally disabled").

### III. CONCLUSION

Accordingly, the Court holds that the veteran is entitled to a 100% schedular disability rating for his active lymphadenopathy, analogously rated under DC 7709, with an appropriate effective date. *See* 38 U.S.C. § 5110(g) ("where compensation . . . is in-

creased pursuant to any Act ... the effective date of ... [the] increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act."). The veteran's Motion for Summary Reversal and Remand is denied. The October 25, 1996, decision of the BVA is REVERSED and the case is REMANDED for assignment of the appropriate rating under DC 7709.