**James R. SWANSON, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 95–1082.**

United States Court of Appeals for Veterans Claims.

Argued May 27, 1999.

Decided June 23, 1999.

William S. Mailander, with whom Robert L. Nelson and Michael P. Horan were on the briefs, for the appellant.

Gregory W. Fortsch, with whom Leigh Bradley, General Counsel; Ron Garvin, Assistant General Counsel; and Mary Ann Flynn, Deputy Assistant General Counsel, were on the brief, for the appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, veteran James R. Swanson, appeals through counsel a March 15, 1995, decision of the Board of Veterans' Appeals (BVA or Board) that denied entitlement to an effective date earlier than February 24, 1986, for the assignment of a 100% schedular rating for Department of Veterans Affairs (VA) disability compensation for service-connected post-concussion syndrome (PCS) (claim 1), denied an earlier effective date for the assignment of a 50% schedular rating for service-connected PCS (claim 2), and found that new and material evidence had not been presented to reopen a previously and finally disallowed claim for service connection for residuals of a neck and back injury (claim 3). Record (R.) at 4. The appeal as to claim 3 was the subject of a joint motion for remand to the BVA that was granted by the Court on December 11, 1996. On December 30, 1998, the Court—concluding that the appellant had not filed a jurisdictionally valid Notice of Disagreement (NOD) as to claim 2—dismissed that claim. Hence, only claim 1 remains before the Court. For the reasons that follow, the Court will vacate the BVA decision as to claim 1 and remand the matter.

## I. Relevant Background

The veteran had active service in the U.S. Army from July 1953 to May 1957. R. at 24. According to the Department of the Army, his service medical records were destroyed in a July 1973 fire at the National Personnel Records Center and "cannot be reconstructed". R. at 376.

On September 9, 1981, the veteran filed a claim for VA disability compensation based

on the following: "CONCUSSION—NERVE DAMAGE[,] Late Summer 1955". R. at 51. In December 1984, the Board found as follows: "Resolving reasonable doubt in the veteran's favor, the Board concludes that he suffered a head injury in service resulting in [PCS]." R. at 294. Thereafter, a VA regional office (RO) in June 1985 awarded a 10% rating as to the veteran's PCS, effective September 9, 1981. R. at 300. The veteran appealed to the Board as to the rating assigned in the June 1985 VARO decision; in his July 23, 1985, Substantive Appeal to the Board, he indicated that he sought "a rating of 100 percent" and stated:

> Attention is drawn particularly to symptomatology. Although claimant holds a degree in accounting, *he has not been able to intellectually function* even in simple bookkeeping since [the] time of the accident. Further, immediately following the tank accident, claimant was unable to perform the intellectual aspects of his duties.... Indeed, the documentary evidence ... shows a history of such malfunctioning.

R. at 305 (emphasis added). The veteran also described himself as experiencing "[m]emory lapse" and "[s]ocial [i]nadaptability". R. at 306. On July 30, 1985, he filed with the RO, on a VA Form 21–8940, an application for increased compensation based on unemployability. Preliminary R. at 62–66.

The transmission of the record on appeal (ROA) indicated that the veteran attached to his July 1985 Substantive Appeal nearly 400 pages of documentation, much of which is duplicative, describing his unemployability. *But see* Appellant's Brief (Br.) at 3 (where appellant implies that evidence attached to his July 1985 letter was "previously submitted to VA"). That documentation included the following:

● A November 1975 private medical record indicating as follows: "[The veteran's] principal difficulty consists of episodes lasting from a day or two up[ ]to two weeks during which time he will be unable to function." R. at 395.

● A May 1978 letter from Dr. Logsdon, a private chiropractor, who described having treated the veteran since "about 19 years ago". R. at 381. Dr. Logsdon "tentatively diagnosed [the veteran's] problem as VERTEBRAL ARTERY COMPRESSION SYNDROME of undetermined orig[i]n", as to which Dr. Logsdon was able to provide "short peorids [sic] of relief". He described the veteran as follows: "His behavioral pattern runs from ideas of genius when the patient is functional to moronic when he is not.... When he is affected by his malady he becomes an entirely different person. He becomes recluse and withdrawn, uncommunicative ... and unpredictable in his decisions. He almost acts as though he is in a trance." *Ibid.*

● A January 1979 private medical record indicating that the veteran stated as follows: "[H]e has had two car wrecks related to ... uncontrolled passing out." R. at 410.

● An October 1980 letter from Dr. Hall, a private physician, who stated as follows: "[T]he symptoms he is having most likely originated from a concussive injury and at this point would be considered permanent and [I] feel could have produced his ˙psychoneurotic symptoms as well as his other symptoms." R. at 418.

● A January 1981 private medical record describing treatment from June to August of 1973 that noted as follows: "His constellation of symptoms were compatible with the diagnosis of major affective disorder, bipolar, mixed type." R. at 392.

● A February 1982 letter from Dr. Hanahan, a private radiologist, who concurred "that some of [the veteran's] problems are typical of [PCS]." R. at 421. Dr. Hanahan concluded as follows: "After reviewing his case, I was forced to tell Jim [the veteran] that he should follow through with his claim to the VA, which he had been very reluctant to do. *I can see no way for him to continue trying to earn a living in this condition.*" R. at 421 (emphasis added).

● A March 1982 letter from Dr. Dunne, a private neurologist, who indicated that the veteran's history "is compatible with a quite severe cerebral concussion" and opined that the veteran's physical and mental disorders

were "related by the history to the tank accident of 1955." R. at 473–74.

- An October 1982 VA neurologist's report that indicated as follows: "At the present time [the veteran] is certainly rather significantly disabled.... [H]e certainly *has ... neurological defects that have been* rather significant and *incapacitating to him.*" R. at 479 (emphasis added).

- A March 1983 letter from Dr. Hanahan that described the veteran's *inability to perform simple tasks* such as carrying on a conversation that involved more than "one train of thought at a time". R. at 545.

- A June 1983 record of a medical evaluation performed by Dr. Hanahan that indicated that the veteran was emotionally unstable, suffered from back and neck injuries, nerve and brain damage, vision loss, and hearing distortion that made him unable to "tolerate television, stereo, radio, public address systems, or high-frequency vibrations". R. at 546.

- A June 1983 letter certifying the veteran's *eligibility for social security disability benefits.* R. at 424.

- A January 1984 sworn affidavit of Clarence Bartlett, Jr., indicating that the veteran "was able to survive" only because of the "heroic efforts on a day-to-day basis" of the veteran's ex-wife, Clara. R. at 669.

- A January 1984 notarized affidavit in which the veteran described himself as unable to "do *any* job that I had held before going on active duty" and as being *"unexplicably [sic] unemployable."* R. at 314 (emphasis added). He also described *losing a business* and his house and being unable to "put the application [for VA compensation] together" without assistance from others. R. at 315.

- A July 1984 letter from the Vice Chairman of the Bank of North Hardin, indicating as follows: "To my knowledge [the veteran] *has never been publicly employed or held a job* since he was discharged from the Army." R. at 675 (emphasis added).

- A July 1985 letter from the veteran to the RO that stated as follows: "A few days ago, a retired JAGC [ (Judge Advocate General Corps) ] Colonel looked at my claim. He said that it was very obvious to him that there had been an administrative error on the part of the Board." R. at 425. The letter asserted error in the Board's failure to consider all of the evidence submitted at an October 3, 1984, hearing before the Board. R. at 425–26.

In December 1985, the Board denied a rating in excess of 10% for PCS. R. at 710. Subsequently, as an attachment to an April 1986 letter to the RO, described below, the veteran submitted a February 1986 affidavit from Reverend Cook, who stated that the veteran "was brought to [Reverend Cook's] church" by a parishioner in January 1982. R. at 724. Reverend Cook recounted multiple violent episodes involving the veteran and described the veteran as being unable to perform "[a]ny physical task", such as to walk across the street or to sort mail without becoming "pale, shaky, and disoriented". Reverend Cook further indicated that, prior to the tank accident, the veteran had been "seemingly destined for greatness". *Ibid.* In the April 1986 letter, the veteran alleged "clear and unmistakable error[ (CUE) ] ... under the provisions of 38 C.F.R. [§ ] 3.105(a)" in the May 1985 RO decision and in the December 1985 BVA decision; the veteran asserted that VA had failed to consider evidence of "complete social and industrial inadaptability" that warranted a 100% rating. R. at 720.

In a letter to the veteran dated May 30, 1986, the BVA Chairman determined that the May 1985 RO decision had not contained CUE and denied the veteran's "request for reconsideration of the Board's decision entered December 1985" (the Board had construed his CUE claim as to the 1985 BVA decision as a motion for the Board to reconsider that decision). R. at 726. The May 1986 letter from the BVA Chairman also indicated that the veteran could request a formal hearing should he wish to "reopen" his claim (*ibid.*); the veteran subsequently did so request in a June 11, 1986, statement in support of claim (R. at 728). An August 1986 record of an "informal hearing" indicated the following "impression" by the VA interviewer: "[H]ad it not been for [the sup-

port rendered unto the veteran by his family and church] he would have required numerous psychiatric hospitalizations." R. at 732.

In March 1987, the RO considered the "claim for increase" and assigned a 50% rating for PCS, effective June 11, 1986. R. at 755. The RO decision indicated as follows: "[T]he [rating board] is willing to concede that the veteran exhibits ... considerable impairment of social and industrial adaptability." R. at 755. At a subsequent hearing before the RO in January 1990, the hearing officer noted as follows: "The issue of employment has come up time and again here and it's quite apparent that the total evaluation is specifically what you seek." R. at 804. The hearing officer then proceeded to help the veteran to develop facts pertinent to his unemployability, including his testimony under oath that he had not been gainfully employed since his in-service head injury. R. at 804–07. In January 1990, the hearing officer issued a decision denying a rating in excess of 50%, but did not address in his decision the matter of a rating for a total disability based on individual unemployability (TDIU). *See* R. at 809–13. Later that month, the BVA remanded to the RO the issue of an increased rating. R. at 814–19.

While his claim was under consideration before the RO on remand, the veteran, in July 1991, specifically sought reconsideration of, inter alia, the December 1985 BVA decision on the basis of eleven *"obvious error[s] of fact or law."* R. at 821, 858–63. Apparently, Jack Blasingame, the signatory BVA member to the BVA decision here on appeal (R. at 21), in an undated and apparently off-the-record memorandum addressed to then Deputy Vice Chairman Richard Standefer of the BVA, noted that the veteran "wants a total rating due to unemployability". R. at 1655. Mr. Blasingame further stated as follows: "Since it appears that [the veteran] would get the same benefits if he prevailed on the current appeal as he would on a successful reconsideration[,] ... it's not obvious why he wants reconsideration.... My advice is to deny the request for reconsideration and throw him a bone by saying that we'll use all the material he has submitted in our decision on his current claim." *Ibid.* A

May 1992 letter from then Deputy Vice Chairman Standefer to the veteran communicated that the Board had denied the request for reconsideration and that the Board would "continue with appellate review" and during such review would "consider all of the material" submitted in support of the motion for reconsideration. R. at 874. The veteran responded in a July 1992 letter stating his assumption that the BVA would consider the allegations of obvious error in the December 1985 BVA decision that had been raised in his July 1991 motion for reconsideration. R. at 876.

In January 1993, the Court dismissed for lack of jurisdiction the veteran's appeal of the Deputy Vice Chairman's denial of his motion for reconsideration because the veteran had failed to demonstrate that he had filed a timely Notice of Appeal as to that denial of reconsideration. *Swanson v. Principi,* 4 Vet.App. 263 (1993) (table); R. at 907–08. Following additional factual development, the RO in June 1993 assigned a 100% schedular rating for the veteran's PCS, effective October 31, 1988. R. at 941. In April 1994, the veteran submitted to VA a letter asserting, inter alia, eleven obvious errors in the failure to award him "entitlement to a permanent and total disability rating effective September 10, 1981." R. at 955. He then submitted a March 1994 letter from a private neuropsychologist who opined that the veteran had "been permanently[,] totally[,] and continuously disabled due to a brain injury" sustained in service. R. at 967.

In the March 15, 1995, BVA decision here on appeal, the Board determined that—due to the fact that its December 1985 decision had become final—the veteran's entitlement to an earlier effective date for a 100% rating "must relate to his ... claim for an increased evaluation submitted on June 11, 1986." R. at 7. The Board then determined that the statement by Reverend Cook had been the earliest dated, previously unconsidered evidence submitted since the December 1985 BVA decision, and assigned the date of that statement—February 24, 1986—as the proper effective date for the veteran's 100% schedular rating based on the veteran's June 11, 1986, claim. R. at 12. The BVA also con-

cluded that the veteran had asserted CUE in the May and June 1985 RO decisions, but determined that those RO decisions had been subsumed in the Board's December 1985 decision and that the claims of CUE were thus without legal merit, citing *Smith (William) v. Brown*, 35 F.3d 1516 (Fed.Cir.1994), and *Duran v. Brown*, 7 Vet.App. 216 (1994). R. at 7.

## II. Analysis

### A. Effective Date of 100% Schedular Rating

The Board awarded the veteran a 100% schedular rating for PCS pursuant to 38 C.F.R. § 4.132, Diagnostic Code (DC) 9304 (1994), which then provided for a 100% rating for "[d]ementia associated with brain trauma" when such condition caused "[i]mpairment of intellectual functions, orientation, memory and judgment, and lability and shallowness of affect of such extent, severity, depth, and persistence as to produce total social and industrial inadaptability." (A 100% rating under DC 9304 currently requires "[t]otal occupational and social impairment, due to [inter alia] ... gross impairment in thought processes or communications; ... grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living ... [etc.]". 38 C.F.R. § 4.130, DC 9304 (1998).) The appellant does not state an objection to the selection or application of DC 9304, and that matter is not before the Court on appeal. *See Ford v. Gober*, 10 Vet.App. 531, 535–36 (1997); *Degmetich v. Brown*, 8 Vet.App. 208, 209 (1995), *aff'd*, 104 F.3d 1328 (Fed.Cir.1997); *see also Butts v. Brown*, 5 Vet.App. 532, 538 (1993) (en banc) (stating that law and regulation "recognize [that] VA and the BVA possess specialized expertise in identifying and assessing the medical nature of a claimed condition, and their application of a particular DC to a particular condition is due ... deference"). Rather, the appellant is appealing the assignment of February 24, 1986, as the earliest possible effective date for his 100% schedular rating for PCS.

■ Section 5110(a) of title 38, U.S.Code, provides as follows: "Unless specifically provided otherwise in this chapter, ... a claim for increase[ ] of compensation

... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a). Section 5110(b)(2) then "specifically provide[s] otherwise" by stating as follows: "The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date." 38 U.S.C. § 5110(b)(2); *see Hazan v. Gober*, 10 Vet.App. 511, 520 (1997). The implementing regulations provide in pertinent part:

> (o) *Increases* (38 U.S.C. [§§ ] 5110(a) and 5110(b)(2) ... )—(1) *General.* Except as provided in paragraph (o)(2) of this section ..., date of receipt of claim or date entitlement arose, whichever is later....

> (2) *Disability compensation.* Earliest date as of which it is factually ascertainable that an increase in disability had occurred if claim is received within 1 year from such date ***otherwise, date of receipt of claim.***

38 C.F.R. § 3.400(*o*)(1), (2) (1998) (boldface italic emphasis added). A Board determination of the proper effective date is a finding of fact. *See Hanson v. Brown*, 9 Vet.App. 29, 32 (1996); *Scott v. Brown*, 7 Vet.App. 184, 188 (1994). The Court reviews questions of fact using the "clearly erroneous" standard of review in 38 U.S.C. § 7261(a)(4). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... [the Court] cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

■ Based on the Board's finding of a June 1986 claim for a rating increase (R. at 8), the Board determined that the earliest date within one year prior to that claim when it was factually ascertainable, under section 5110 and 38 C.F.R. § 3.400(*o*), that the veteran's service-connected PCS had increased in severity was February 24, 1986, the date of the sworn statement of Reverend Cook (R. at 724). R. at 12. In so finding, the Board expressly refused to review evidence that it

448

had already considered in connection with its previous and final December 1985 decision. *Ibid.* ("With regard to the appropriate effective date to be assigned, we note that the earliest evidence submitted of [sic] which had not been considered by the Board in its December 1985 decision was the February 24, 1986, statement made by Rev. Cook."). In defense of the Board's decision, the Secretary argues as follows: "[W]ithout a showing of CUE or obvious error in the Board's December 1985 decision ... a discussion of the evidence predating the December 1985 decision would be pointless simply because an effective date prior to that date is impermissible"; the Secretary cites no support for this assertion. Br. at 9

In *Hazan,* an opinion of this Court issued subsequent to the March 1995 BVA decision on appeal, the Court was faced with essentially the same circumstances and position of the Secretary as presented in this case. *Hazan,* 10 Vet.App. 511. In *Hazan,* the claimant sought an earlier effective date and the Secretary argued that, as to the effective-date determination, consideration of evidence that predated a final Board decision on that same matter "would necessarily involve [at that time] an impermissible collateral attack upon [i.e., a claim of CUE in] the 1990 BVA decision." *Id.* at 519. The Court disagreed with the Secretary, and held that:

[T]he Secretary's position is ... fundamentally mistaken insofar as it suggests that the Board (and the RO) **could not properly have** considered the [evidence predating the date of the claim for an increase] at all. In point of fact, as the Court's caselaw [and] ... section 5110(b)(2) ... demonstrate, VA must review **all the evidence of record (not just evidence not previously considered** ) once a claimant has submitted a well-grounded claim for an increased disability rating.... [T]he question before the Board was: On the basis of that evidence [submitted in connection with the increased-rating claim] and all prior evidence, when was an increase in disability "ascertainable"? The Board erred as a matter of law in making that "ascertainable" decision only on the basis of the new evidence. We cannot say what result would have flowed from con-

sideration of all the evidence of record.... Hence, that matter will be remanded....

In carrying out this analysis on remand, the Board must determine under the evidence of record the earliest date that the increased rating was "ascertainable" within the meaning of section 5110(b)(2).... If it was so ascertainable on a date within one year before the date of the veteran's ... application for such a rating increase, the Board should proceed to assign that date as the effective date for the [100%] rating.

*Id.* at 521.

On May 12, 1999, the appellant filed a notice of supplemental authority as to an opinion of the VA Office of General Counsel that is in accord with *Hazan, supra,* and that was also issued after the BVA decision here on appeal. VA Gen. Coun. Prec. 12–98, at point 5 (Sept. 23, 1998) (concluding "that, when a veteran submits a claim alleging an increase in disability within one year prior to VA's receipt of the claim and medical evidence substantiates the increased disability, the effective date of an award of increased disability compensation must be determined based upon the facts of the particular case .... [;] the record as a whole, including testimonial evidence, must be analyzed for this purpose"); *see also* 38 U.S.C. § 7104(c) (Board is bound in its decisions by precedent opinions of VA General Counsel); 38 C.F.R. § 19.5 (1998) (same); *Bernard v. Brown,* 4 Vet.App. 384, 394 (1993) (remanding for Board to consider VA General Counsel Precedent Opinion issued after Board decision on appeal); *cf. Henderson (Richard) v. West,* 12 Vet.App. 11, 17 (1998) (citing *Brewer, infra* ); *Brewer v. West,* 11 Vet.App. 228, 233 (1998) (Court will apply new caselaw to pending appeals).

In this case, the evidence predating Reverend Cook's affidavit (*see, e.g.,* R. at 314–15, 421, 424, 479, 545, 675) is of special concern, given that the Reverend's statement itself referred to events that apparently occurred well before and up to the date of that statement. R. at 724 (referring to events that had occurred "for over four years"); R. at 880–81 (November 1992 VA field interview with spouse of veteran's physician stating

that veteran had lived in their apartment "for approximately 10 years" and indicating that veteran had exhibited "extremely unpredictable and destructive behavior"). Moreover, the most recent medical evidence of record suggested that the veteran may have been unemployable long before 1986 due to his accident during service. R. at 880 (November 1992 VA field interview with head injury therapist who had known veteran for "approximately 11 years" and who indicated that veteran "can't take the stress and pressure of day[-]to[-]day living"); R. at 967 (March 1994 letter from private neuropsychologist opining that veteran had "been permanently[,] totally[,] and continuously disabled due to a brain injury" sustained in service). Because the Board improperly failed to consider whether *"all the evidence of record "*—including evidence predating the December 1985 BVA decision—showed an ascertainable increase in the severity of the veteran's then 50% rated service-connected PCS, the Court holds that the BVA's determination that February 24, 1986, was the earliest possible effective date for the veteran's PCS is clearly erroneous and will vacate the decision in that respect and remand the matter for readjudication as to whether the veteran is entitled to an effective date earlier than February 24, 1986. *Hazan, supra; see also Quarles v. Derwinski,* 3 Vet.App. 129, 135–36 (1992) (holding BVA effective-date determination clearly erroneous for failure to consider evidence predating date of application for increase); *cf. Scott,* 7 Vet.App. at 188–89 (affirming BVA effective-date determination when all evidence of record did not make factually ascertainable an increase in severity of disability prior to date of claim for increase).

In its decision, the Board considered June 1986 to be the date of the veteran's claim for a rating increase for his service-connected PCS. R. at 8. In this regard, the Court notes the appellant's contention (Br. at 12) that he had first submitted a rating-increase claim on April 9, 1986, to which he had attached Reverend Cook's February 1986 statement and that that April 1986 submission itself references a March 27, 1986, submission that does not appear to be contained in the ROA. R. at 718. On remand, the Board should consider the possibility that the veteran's increased-rating claim had actually been filed earlier than June 1986 by virtue of the April 1986 letter (or the March 1986 letter referenced therein) and, if so, should readjudicate, in terms of that earlier date of claim, the effective date of the 100% schedular award.

### B. TDIU

Both the Secretary and the appellant agree that the Board erred by failing to consider whether evidence of unemployability could have yielded a 100% rating based on a claim of TDIU—presumably under 38 C.F.R. § 4.16(b) (1998) ("[i]t is the established policy of [VA] that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled"), and that, in view of this error, remand is appropriate. *Compare* Appellant's Br. at 13–14 *with* Secretary's Br. at 11–12. However, before the Court can remand the unadjudicated TDIU claim, we must be satisfied that we have jurisdiction over the matter.

This Court's appellate jurisdiction derives exclusively from the statutory grant of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *see also Prenzler v. Derwinski,* 928 F.2d 392, 393–94 (Fed.Cir. 1991); *Skinner v. Derwinski,* 1 Vet.App. 2, 3 (1990). In general, the Court has jurisdiction to review a final BVA decision only where an NOD was filed on or after November 18, 1988, as to the underlying RO decision. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]. *But see* 38 U.S.C. § 7111 (permitting appeal to this Court of Board decision regarding CUE in prior Board decision, which is an original claim to the Board, without jurisdiction-conferring NOD). An NOD is defined by regulation as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [RO]

and a desire to contest the result"; it "must be in terms which can be reasonably construed as [expressing] disagreement with that determination and a desire for appellate review". 38 C.F.R. § 20.201 (1998); *see also Evans (Billy) v. West*, 12 Vet.App. 396, 398–99 (1999); *Fenderson v. West*, 12 Vet.App. 119, 128 (1999); *Hamilton v. Brown*, 4 Vet. App. 528, 531 (1993) (en banc), *aff'd*, 39 F.3d 1574, 1584–85 (Fed.Cir.1994).

"Whether a document is an NOD is a question of law for the Court to determine de novo under 38 U.S.C. § 7261(a)". *Beyrle v. Brown*, 9 Vet.App. 24, 27 (1996); *see also Evans (Billy)* and *Fenderson*, both *supra*. Generally, an NOD "shall be filed within one year from the date of mailing of notice of the result of initial review or determination" with which it is disagreeing. 38 U.S.C. § 7105(b)(1); *see Evans (Billy)* and *Fenderson*, both *supra*. *But see Evans (Billy)*, 12 Vet.App. at 398–99 (citing cases regarding equitable tolling of Notice of Appeal period under certain circumstances).

█ At oral argument, counsel for the appellant asserted that prior to December 1985 the veteran had filed a claim for a TDIU rating, and that that TDIU claim had not been addressed until January 1990 at a hearing before the RO during which the hearing officer noted as follows: "The issue of employment has come up time and again here and it's quite apparent that the total evaluation is specifically what you seek." R. at 804. (The Secretary, in his brief, states that "[t]he issue [of TDIU] was raised for the first time in July 1985, but it was not adjudicated." Br. at 12 (citing R. at 303–08)). However, in a subsequent January 1990 decision, the hearing officer did not address the matter of a TDIU rating (*see* R. at 809–13), nor did the RO address a TDIU rating in a March 1991 decision issued following a remand from the Board as to the matter of an increased schedular rating (R. at 854). Following that March 1991 RO decision, the appellant filed a June 1991 statement to the following effect: "All of the evidence . . . establishes—beyond *all* reasonable doubt—that the veteran was permanently and totally disabled" following his in-service accident. R. at 860. The Court construes that June 1991 statement to

be the jurisdiction-conferring NOD as to this matter, *see Evans (Billy), Fenderson*, and *Beyrle*, all *supra*, in effect protesting the March 1991 RO decision's failure to address the pending TDIU claim. *See Hazan*, 10 Vet.App. at 516–17 (citing, inter alia, *Slater v. Brown*, 9 Vet.App. 240, 244–45 (1996); *Isenbart v. Brown*, 7 Vet.App. 537, 540–41 (1995)). (The Court notes that the veteran's June 1991 statement could not have served as an NOD as to any other aspect of the March 1991 RO decision because the matter of a schedular rating had already been placed into appellate status and, in fact, had already been the subject of a Board remand (R. at 814). *See Hamilton*, 4 Vet.App. at 538 ("[t]here can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a ***final*** RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant").)

Accordingly, the Court considers the issue of a pending, unadjudicated TDIU claim to be not contested between the parties and will remand that claim for further adjudication, including the issuance by the RO of a Statement of the Case (SOC). *See Fenderson*, 12 Vet.App. at 132 (remand required when Court presented with timely NOD as to claim regarding which RO had never issued SOC (citing *Holland v. Gober*, 10 Vet.App. 433, 436 (1997)) (per curiam order)). In this regard, the Court notes that its decision today does not disturb the Board's award of an effective date of a 100% schedular rating effective as of not later than February 24, 1986, and, therefore, that the earliest possible effective date for the veteran's TDIU rating would have to precede the effective date for the 100% schedular award (that is, February 24, 1986, or an earlier date awarded pursuant to the remand of the schedular rating provided in part II.A., above), in order for past-due benefits to be awarded based on TDIU. *See Green (Nelson) v. West*, 11 Vet. App. 472, 476 (1998) ("[s]ince the veteran in this case is entitled to a 100% schedular rating for his service-connected lymphadenopathy, he is not eligible for a TDIU evaluation"); *Vettese v. Brown*, 7 Vet.App. 31, 34–35 (1994) ("claim for TDIU presupposes that

the [schedular] rating for the condition is less than 100%").

### C. CUE

The December 1985 BVA decision became final and may not be reversed or amended in the absence of CUE. *See* 38 U.S.C. § 7111; 38 C.F.R. § 3.105(a) (1998); *see also* 38 U.S.C. §§ 5108, 7105(c); *cf.* 38 U.S.C. § 5110(i) (when previously disallowed claim reopened and allowed on basis of new and material evidence in form of service department records, effective date is date such disallowed claim was filed). When the veteran's July 1991 motion for reconsideration of the December 1985 BVA decision was denied in May 1992, then Deputy Vice Chairman Standefer assured him that the Board would "continue with appellate review" and during such review it would "consider all of the material" submitted in support of the motion for reconsideration. R. at 874. The veteran responded in July 1992 by specifically stating that the BVA should consider as before it on appeal the allegations of obvious error in the December 1985 BVA decision that he had raised in his motion for reconsideration. R. at 876.

Section 3.105(a) of title 38, Code of Federal Regulations, provides:

Where evidence establishes [CUE], the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a). In *Russell v. Principi*, the Court established that, as a threshold matter, a CUE claim cannot be raised for the first time before this Court but that the claim must have been the subject of a final prior BVA adjudication. *Russell*, 3 Vet.App. 310, 313–14 (1992) (en banc).

In the instant case, the Board stated, in pertinent part, as follows:

The veteran has argued that the RO committed "clear and unmistakable error" in its May and June 1985 actions. A recent decision by the U.S. Court of Appeals for the Federal Circuit [ (Federal Circuit) ]

has declared, however, that an action by the RO which has been appealed to and affirmed by the Board is "subsumed" by the Board's decision. Therefore, no claim of [CUE] ... exists as a matter of law as to the disputed RO decision [sic]. *See Smith [(William) ] v. Brown*, 35 F.3d 1516 ...; *see also Duran v. Brown*, [7 Vet.App. 216]. Inasmuch as the Board's December 1985 decision confirmed the RO's May and June 1985 actions awarding a 10 percent rating for [PCS], effective from September 1981, any claims concerning [CUE] in the RO's actions are ***without legal merit***.

R. at 7 (emphasis added). However, the Federal Circuit's opinion in *Smith (William)*, cited by the Board, did not concern whether a claim had been "subsumed"; rather, *Smith (William)* required that "CUE review authority in [38 C.F.R. ] § 3.105(a) ... relat[ed] only to review of [agency of original jurisdiction] adjudicatory decisions and not to those of the Board." *Smith (William)*, 35 F.3d at 1527. It was in *Duran* that this Court held that an RO decision that had been appealed to the Board was "subsumed" by the subsequent Board decision and that, therefore, a claim of CUE could not obtain as to either the Board decision (per *Smith (William)* ), or as to the underlying, "subsumed" RO decision. *Duran*, 7 Vet.App. at 224. The Federal Circuit did not address this subsuming doctrine until it decided *Donovan v. West*, 158 F.3d 1377, 1382–83 (Fed.Cir. 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1255, 143 L.Ed.2d 351 (1999). Hence, the BVA's reference to *Smith (William)* in the decision here on appeal suggests to the Court that the Board had determined that a CUE claim had been pending before it as to a ***Board*** decision—as well as to the May and June 1985 RO decisions—but that it could not then, as a matter of law, address that claim of CUE. The Court notes that the fact that the veteran in July 1992 (R. at 876) had asserted "obvious" rather than "clear and unmistakable" error is of no consequence as to whether the veteran had raised a claim of CUE as to the December 1985 BVA decision. *See Smith (William)*, 35 F.3d at 1526 ("there is no substantive difference in the standard of review for CUE as opposed to obvious

error" (internal quotations omitted)); *Hazan*, 10 Vet.App. at 522 ("CUE claim and an obvious error claim are essentially equivalent"); *Russell*, 3 Vet.App. at 314; *see also Crippen v. Brown*, 9 Vet.App. 412, 422 (1996) (CUE may be based on showing "that there was *no* evidence before the RO that could have supported denial of the claim on the merits; that is, [that] *all* of the evidence militated in support of the claim"); *accord Link v. West*, 12 Vet.App. 39, 45 (1998) (quoting *Crippen* to same effect).

Following the Federal Circuit's opinion in *Smith (William)*, however, and subsequent to the March 1995 BVA decision here on appeal, Congress enacted the Revision of Veterans' Benefits Decisions Based on Clear and Unmistakable Error Act (CUE Act), Pub.L. No. 105–111, § 1(b)(1), 111 Stat. 2271, 2271–72 (1997) (codified at 38 U.S.C. § 7111). Under the CUE Act, if a CUE claim as to a BVA decision was pending before this Court on November 21, 1997, or thereafter (as the Board seemed to consider was the case here), then the BVA decision involved would be subject to such a CUE claim. Pub.L. No. 105–111, § 1(c)(2); *see also Lane v. West*, 11 Vet.App. 412, 413 (1998) (per curiam order). Hence, the Court will vacate the BVA decision as to its determination that the veteran's CUE claim had no legal merit and will remand for the BVA to adjudicate in the first instance this matter pursuant to the CUE Act. The Court expresses no opinion as to what should be the outcome of this remand for consideration of a claim of CUE.

### D. *Appeal of Motion for Reconsideration by BVA Chairman*

The appellant asks this Court to "find that the Chairman's denial of [his] Motion for Reconsideration was arbitrary and capricious", apparently referring only to the May 1992 denial of reconsideration (R. at 874), and not the June 1986 denial of reconsideration (R. at 726). Br. at 17–19. However, because of the remands granted above as to the pending TDIU claim and the veteran's claim of CUE, which may result in the granting of all relief sought in the motion for reconsideration, the Court will not address the matter of the Chairman's denial of the May 1992 denial of reconsideration.

### E. *Removal of BVA Member From Remand Proceedings*

The appellant calls attention to the following statement from the BVA adjudicator, Mr. Blasingame, in advising the Deputy Vice Chairman regarding the appellant's motion for reconsideration: "My advice is to deny the request for reconsideration and throw him a bone by saying that we'll use all the material he has submitted in our decision on his current claim." R. at 1655. Based on that memorandum, the appellant requests that the Court "remand with instruction to assign the case to a different [B]oard member". Br. at 14. The Court rejects this request as, at best, premature. If this case is assigned to Mr. Blasingame on remand and the appellant objects to that assignment, he is free to take up that matter with the BVA. *See* 38 C.F.R. § 19.12(a) (1998) ("Member of the Board will disqualify himself or herself in a hearing or decision on an appeal ... where there are ... circumstances which might give the impression of bias either for or against the appellant").

### III. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the submissions of the parties, the Court affirms the BVA decision insofar as its award of a 100% schedular rating for service-connected PCS effective February 24, 1986, and vacates the March 15, 1995, BVA decision as to its denial of an effective date earlier than February 24, 1986, and as to disposition of the appellant's CUE claim and remands those matters, as well as the pending claim for a TDIU rating, for issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1131, 5107, 5110(b)(2), 7104(a), (d)(1), 7111; 38 C.F.R. §§ 3.105(a), 3.400(*o*)(1), (2), 4.16(b); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See*

*Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West,* 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West,* 11 Vet. App. 468, 472 (1998).

VACATED AND REMANDED.